Michael F. Ram (SBN 104805)
Email:  mram@rocklawcal.com
Matt J. Malone (SBN 221545)
Email:  mjm@rocklawcal.com
Susan S. Brown (SBN 287986)
Email:  sbrown@rocklawcal.com
RAM, OLSON, CEREGHINO & KOPCZYNSKI LLP
555 Montgomery Street, Suite 820
San Francisco, CA  94111
Telephone:  415-433-4949
Facsimile:  415-433-74311

Beth E. Terrell, CSB 178181
Email: bterrell@tmdwlaw.com
Mary B. Reiten, CSB 203142
Email:  mreiten@tmdwlaw.com
TERRELL MARSHALL DAUDT
   & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
Telephone:  (206) 816-6603
Facsimile:  (206) 350-3528

Attorneys for Plaintiffs

THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TUCKER DURNFORD, individually and on behalf of all others similarly situated, <br><br>        Plaintiff, <br><br>      v. <br><br> MUSCLEPHARM CORP., <br><br>        Defendant. | No. 3:15-cv-00413-HSG <br><br> **FIRST AMENDED CLASS ACTION COMPLAINT** <br><br> JURY TRIAL DEMAND <br><br> Honorable Haywood S. Gilliam Jr. |

Plaintiff Tucker Durnford ("Plaintiff") brings this Class Action Complaint against

MusclePharm Corp ("MP") individually and on behalf of all others similarly situated, and

complains and alleges upon personal knowledge as to himself and his own acts and experiences

and, as to all other matters, upon information and belief, including investigation conducted by his

attorneys.

# I.   NATURE OF THE ACTION

1.     This is a civil class action brought individually by Plaintiff and on behalf of all persons in the below-defined proposed Classes ("Class Members") who purchased the dietary supplement MusclePharm Arnold Schwarzenegger Series Iron Mass ("Product") from Defendant MP.

2.     The Product label makes a series of false claims regarding the ingredients in the Product, most particularly about the nature of the protein content.  Ultimately, the labeling claims are at best deceptive and at worst false, leaving consumers like Plaintiff to pay far more money for far less than Defendant represented.

3.     The protein industry is a growing and extremely competitive business environment: "during the forecast period, [the market for] protein products is expected to grow by 62% to reach US$7.8 billion in 2018."[1]

4.     However, the price of wholesale protein keeps increasing and is usually purchased for roughly $15-$18/kilo, making the profit margins on protein powder products very low.

5.     MP designed, formulated, manufactured, warranted, advertised and sold the Product throughout the United States, including in the State of California.

6.     To reduce protein manufacturing costs, MP adds cheaper free form amino acids and non-protein ingredients to increase the nitrogen content of the Product's protein powder.  Common tests use nitrogen as a "tag" for overall protein content, though this is not a direct measure of actual protein content.  But it does make the product appear to have more protein than it, in fact, contains.

7.     Adding nitrogen-rich components to raise the level of measured protein is commonly referred to as "protein-spiking," "nitrogen-spiking" or "amino-spiking."  It  was evidenced recently in the 2007 pet food recalls and the 2008 Chinese milk powder scandal, in which melamine, a nitrogen-rich chemical, was added to raw materials to fake high protein contents.

---

[1] *See* http://www.euromonitor.com/sports-nutrition-in-the-us/report (last visited October 30, 2014).

8.   As a result of Defendant's practices, consumers – including Plaintiff and the Class Members defined below – receive a product that contains approximately 50% less protein than Defendant represented.

9.   Protein-spiking has been condemned by the American Herbal Products Association (AHPA), an organization of dietary supplement manufacturers, which has issued a standard for manufacturers for measuring the true protein content of their products which:

    a.   Defines protein as "a chain of amino acids connected by peptide bonds" for labeling purposes;

    b.   Include only proteins that are "chains of amino acids connected by peptide bonds;" and

    c.   Excludes any "non-protein nitrogen-containing substances" when counting total protein content.[2]

10.   GNC, one of the largest distributors in the United States of whey protein products, has publicly criticized protein-spiking, claiming that it misleads consumers.  According to GNC, consumers cannot be sure that they are getting 100 percent protein in their products since companies don't always show how they figure total grams of protein per serving.[3]

11.   Despite the knowledge that protein-spiking is misleading to consumers, Defendant continues to advertise, distribute, label, manufacture, market, and sell the Product in a misleading and deceptive manner by including protein-spiking agents  in the overall protein content.

## II.  JURISDICTION AND VENUE

12.   This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2). In the aggregate, Plaintiff's claims and the claims of the other members of the Class exceed $5,000,000 exclusive of interest and costs, and there are numerous class members who are citizens of States other than Defendant's States of citizenship, as detailed below.

13.   This Court has personal jurisdiction over Defendant because Defendant conducts

---

[2] www.ahpa.org/Default.aspx?tabid=441 (last visited October 30, 2014).

[3] www.gnclivewell.com/realprotein (last visited October 30, 2014).

1    substantial business in the State of California, such that Defendant has significant continuous and

2    pervasive contacts with the State of California.

3          14.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1301(a)(2), 1391(b)(2),

4    and 1391(c)(2) as a substantial part of the events and/or omissions giving rise to the claims

5    emanated from activities within this District and Defendant conducts substantial business in this

6    District.

7                               **III. PARTIES**

8        <u>**Plaintiff**</u>

9          15.      Plaintiff and Class Members suffered an injury in fact caused by the false,

10   fraudulent, unfair, deceptive and misleading practices set forth in this Complaint. Plaintiff is a

11   resident of the City of Berkeley, State of California, and the events set forth in the Complaint

12   took place there, when, on or about July 13, 2014, Plaintiff purchased the Product for his own use

13   and not for resale from a GNC store located in San Jose, California.

14   *Defendant*

15          16.      MusclePharm Corporation is a corporation licensed in the State of Nevada, with a

16   principal place of business at 4721 Ironton St., Building A, Denver, CO 80239.

17                   **IV. FACTUAL BACKGROUND**

18   *Defendant's Misleading Labeling of "MusclePharm Arnold Schwarzenegger Series Iron*

19   *Mass"*

20

21          17.      Defendant makes a specific false and misleading label claim regarding the amount

22   and source of protein in the Product by stating, "MUSCLE PLASMA PROTEIN

23   TECHNOLOGY: 40g of a potent blend of hydrolyzed beef protein and lactoferrin protein":

24       / / /

25       / / /

        / / /

26       / / /

27       / / /

28

**REVOLUTIONARY 5-STAGE MASS DELIVERY SYSTEM**
Attacks Every Angle of Muscle Building!

**1. ELITE COMPLEX CARBOHYDRATES MATRIX:**
Quicker recovery & muscle building, giving muscles a skin-splitting look

**2. MUSCLE PLASMA PROTEIN TECHNOLOGY:**
40g of a potent blend of hydrolyzed beef protein and lactoferrin protein

**3. HIGH PERFORMANCE HEALTHY FATS:**
Blend of healthy fats (EFA's), MCT's and saturated fats which are essential for hormone production

**4. PERFORMANCE GROWTH & MUSCLE VOLUMIZER:**
Creatine and BCAA nitrates help promote muscular strength, size and endurance

**5. PRO-DIGEST BLEND:**
Special dietary fiber blend, aids with digestion of added protein, carbs and fat you need to **GET BIG—AND STAY BIG**

18.    Defendant further misleads consumers by creating the sub-category "Muscle Plasma Protein Matrix" under the Supplement Facts portion of the Product label.  This sub-category only contains the ingredients hydrolyzed beef Protein and lactoferrin protein.  This Supplement Facts panel also discloses that the protein content of the Product is 40 grams per serving.  Nowhere else in the Supplement Facts panel does Defendant list any other "proteins":

///

///

///

///

///

///

**Supplement Facts**

Servings Size: 95g (2 scoops)
Servings Per Container: 24 (2.27kg/5lbs)

| | Amount Per Serving | % DV* |
|---|---|---|
| Calories | 485 | |
| Calories From Fat | 190 | |
| Total Fat | 21 g | 41% |
| Saturated Fat | 1 g | 6% |
| Trans Fat | 1 g | |
| Cholesterol | 2 mg | 1% |
| Sodium | 240 mg | 10% |
| Potassium | 550 mg | 27% |
| Total Carbohydrate | 34 g | 25% |
| Dietary Fiber | 1 g | 4% |
| Sugars | 4 g | |
| Protein | 40 g | 72% |
| Iron Mass Propriatery Blend | 71500 mg | ** |

**Elite Complex Carbohydrates Matrix**
Sweet Potato Powder, Barley Starch.

**Muscle Plasma Protein Matrix**
Hydrolyzed Beef Protein, Lactoferrin.

**High Perfomance Healthy Fats Matrix**
Sunflower Oil Powder, Whipped Cream Powder,
MCT Powder (Medium-Chain Triglycerides from
Coconut).

**Perfomance Growth & Muscle Volumizer**
Creatine Monohydrate, L-Glycine,
BCAA Nitrates (Leucine, Iso-Leucine, Valine)
(3.1.2 Patent Pending Ratio), D-Ribose.

**Pro-Digest Blend**
Protease, Lactase, Amylase, Lipase, Inulin,
Fructooligosaccharides (FOS).

*Percent Daily Value (%DV) Based on a 2,000 Calorie Diet
**Daily Value (DV) Not Established

**Other Ingredients:** Glucose Polymers, Cocoa Powder,
Natural and Artificial Flavors, Sea Salt, Acesulfame
Potassium, Sucralose.

19.     In fact, Defendant's claimed total protein count of 40 grams of protein per serving is not just hydrolyzed beef protein and lactoferrin protein.  It also includes protein-spiking agents: the non-amino acid, non-protein compound creatine monohydrate and the free-form amino acids, l-glycine, leucine, iso-leucine and valine.

20.     Though the protein-spiking agents are included in the overall protein count, they are not protein.  In both the Product label and the Supplement Facts panel, Defendant separates the actual protein (hydrolyzed beef protein and lactoferrin protein) from the protein-spiking agents (creatine monohydrate and free-form amino acids), by placing the protein-spiking components under the "Performance Growth & Muscle Volumizer" sub-category.

21.     Defendant also makes this distinction on the Product label by including the misleading statement, "It utilizes a 5-stage Mass Delivery System, comprised of advanced protein technology, elite complex carbs, healthy fats, cutting-edge performance ingredients and a balanced digestive blend".  Defendant again separates the categories containing the actual proteins from the protein-spiking agents under their "5-stage Mass Delivery System":



22.     Once these protein-spiking agents are removed from the formula of analysis, and the "bound" amino acid count is determined, the true content of hydrolyzed beef protein and lactoferrin protein in the Product can be determined.

23.     After scientific testing of the Product, the actual total content per serving of protein is actually around 19.4 grams (as calculated from the total bonded amino acids) as opposed to 40 grams of protein claims by Defendant for the Product.  *See* Exhibit A.

24.     When a consumer asked Defendant MP whether the company "nitrogen spikes" its products via Twitter, MP clearly and publicly misrepresented its practices:



25.     A reasonable consumer, looking at the false and misleading claims on the Product label, and reading the "Supplement Facts," would be misled into thinking that the 40 grams of protein per serving claimed by Defendant for the Product are derived exclusively from hydrolyzed beef protein and lactoferrin protein.

26.     Nowhere on the label does it state, or even imply, that the protein content contains any, let alone substantial amounts of protein-spiking agents such as free-form amino acids and non-protein compounds.  In fact, by stating on the label that the product contains a total of 40g in protein, Defendant specifically represents a content of actual protein, as opposed to protein-spiking agents.

27.     Plaintiff and Class Members were misled by Defendant's representations regarding the true nature of the protein content and value.

28.     The difference between the Product promised and the Product sold is significant. The amount of actual protein provided, and the measure of protein per serving, has real impacts on the benefits provided to consumers by the Product, and the actual value of the Product itself.

1   Persons requiring a certain amount of protein supplementation, whether as part of a fitness

2   regimen or for real health needs, ingest less than half the amount of protein that Defendant claim

3   the product includes.

4       29.    Defendant's deceptive statements violate 21 U.S.C. § 343(a)(1), which deems

5   food (including nutritional supplements) misbranded when the label contains a statement that is

6   "false or misleading in any particular."

7       30.    California prohibits the misbranding of food in a way which parallels the FDCA

8   through the "Sherman Law," *Health & Saf. Code § 109875, et seq.* The Sherman Law provides

9   that food is misbranded "if its labeling is false or misleading in any particular." *Id*.

10       31.    The Sherman Law explicitly incorporates by reference "[a]ll food labeling

11   regulations and any amendments to those regulations adopted pursuant to the FDCA," as the food

12   labeling regulations of California Cal. Health & Saf. Code, § 110100, subd. (a).

13       32.    The introduction of misbranded food into interstate commerce is prohibited under

14   the FDCA and all parallel state statutes cited in this Class Action Complaint.

15       33.    Plaintiff and Class Members would have purchased a different protein product or

16   would have paid less if they had not been deceived by Defendant's misleading labeling.

17   **V. CLASS ACTION ALLEGATIONS**

18       34.    Plaintiff brings this action individually and as representatives of all those similarly

19   situated pursuant to Rule 23 F.R.C.P. on behalf of the below-defined Classes:

20
21   **National Class:** All persons in the United States who purchased the Product at any time during the four years before the date of filing of this Complaint from any source other than Defendant's website (www.musclepharm.com).

22
23   **California Subclass:** All persons in the State of California who purchased the Product, for personal or household use and not for resale, from any source other than Defendant's website (www.musclepharm.com) at any time during the four years before the date of filing of this Complaint to the present.

24

25   Defendant and its affiliates, parents, subsidiaries, employees, officers, agents, and

26   directors are excluded from the Classes. Any judicial officers presiding over this matter and the

27   members of their immediate families and judicial staff are also excluded from the Classes.

28

1    35.    Certification of Plaintiff's claims for class-wide treatment is appropriate because

2    Plaintiff can prove the elements of the claims on a class-wide basis using the same evidence as

3    would be used to prove those elements in individual actions alleging the same claims.

4    36.    **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The members of the

5    Classes are so numerous that their individual joinder herein is impracticable.  Plaintiff is

6    informed and believes that Class members number in the hundreds of thousands.  The precise

7    number of Class members and their addresses are presently unknown to Plaintiff, but may be

8    ascertained from Defendant's books and records. Class members may be notified of the pendency

9    of this action by mail, email, Internet postings, and/or publication.

10    37.    **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2)**

11    **and 23(b)(3).** Common questions of law and fact exist as to all Class members and predominate

12    over questions affecting only individual Class members. Such common questions of law or fact

13    include:

14          a.    the true nature of the protein content in the Product;

15          b.    whether the marketing, advertising, packaging, labeling, and other promotional

16                materials for the Product is deceptive;

17          c.    Whether Defendant's actions violate  California's  Unfair Competition Law,

18                Business and Professions Code §17200, *et seq.* (the "UCL");

19          d.    Whether Defendant's actions  violate  California's  False Advertising Law,

20                Business and Professions Code §17500, *et seq.* (the "FAL");

21          e.    Whether Defendant's actions violate California's Consumers Legal Remedies

22                Act, Civil Code §1750, *et seq.* (the "CLRA"); and

23          f.    Whether Defendant violated an express warranty.

24    38.    Defendant engaged in a common course of conduct giving rise to the legal rights

25    sought to be enforced by Plaintiff, on behalf of himself and the other Class members. Similar or

26    identical statutory and common law violations, business practices, and injuries are involved.

27    Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous

28    common questions that dominate this action.

39.     **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of the claims of the other members of the Classes because, among other things, all Class members were comparably injured through Defendant's uniform misconduct described above. Further, there is no defense available to Defendant that is unique to Plaintiff.

40.     **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate Class representatives because their interests do not conflict with the interests of the other Class members he seeks to represent, he has retained counsel competent and experienced in complex class action litigation, and he will prosecute this action vigorously. Plaintiff and his counsel will fairly and adequately protect and advance the interests of the Class.

41.     **Insufficiency of Separate Actions – Federal Rule of Civil Procedure 23(b)(1).** Given the small size of individual damages in this case, absent a representative class action, members of the Classes would have no remedy. Even if separate actions could be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue hardship and expense for both the Court and the litigants. A multiplicity of lawsuits would also create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated purchasers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Defendant. The proposed Classes thus satisfy the requirements of Fed. R. Civ. P. 23(b)(1).

42.     **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the other members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the members of the Classes as a whole.

43.     **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other members of the Classes are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for Class

1  members to individually seek redress for Defendant's wrongful conduct. Even if Class members

2  could afford individual litigation, the court system could not. Individualized litigation creates a

3  potential for inconsistent or contradictory judgments, and increases the delay and expense to all

4  parties and the court system. By contrast, the class action device presents far fewer management

5  difficulties, and provides the benefits of single adjudication, economy of scale, and

6  comprehensive supervision by a single court.

7  **VI. CLAIMS ALLEGED**

8  **COUNT I**
**Violation of the Unfair Competition Act**
**Cal. Bus. & Prof. Code § 17200,** *et seq.*
**(On behalf of the California Subclass)**

9

10

11  Plaintiff incorporates paragraphs 1-43 as if fully set forth herein.

12  44.    Plaintiff and the California Subclass have standing to pursue a cause of action for

13  false advertising under Bus & Prof. Code §17200, et seq. because Plaintiff and members of the

14  California Subclass have suffered an injury-in-fact and lost money as a result of Defendant's

15  actions as set forth herein.

16  45.    Defendant's actions as described herein constitute unfair competition within the

17  meaning of Bus. & Prof. Code §17200, in that Defendant has engaged in unlawful, unfair, or

18  fraudulent business practices by violating California's Sherman Food Drug & Cosmetic Act and

19  California's Consumer Legal Remedies Act.

20  46.    Defendant's actions as described herein constitute unfair competition within the

21  meaning of Bus. & Prof. Code §17200, on the additional grounds that Defendant has failed to

22  properly label the Product in accordance with 21 C.F.R. 101, et seq.

23  47.    Defendant's actions also constitute unfair competition within the meaning of Bus.

24  & Prof. Code §17200, in that Defendant has made unfair, deceptive, untrue or misleading

25  statements in advertising mediums, including the Internet, in violation of Bus. & Prof. Code

26  §17500.

27  48.    Defendant's actions have caused economic injury to Plaintiff and California

28  Subclass members. Plaintiff and Class members would not have purchased the Product had they

1  known the true nature of the protein content.

2      49.    Pursuant to Bus. & Prof. Code §17203, Plaintiff and the California Subclass seek

3  an injunction enjoining Defendant from continuing to market, advertise, and sell the Product

4  without first complying with federal and state law and to prevent Defendant from continuing to

5  engage in unfair competition or any other act prohibited by law.

6      50.    Plaintiff and the California Subclass also seek an order requiring Defendant to

7  make full restitution and disgorgement of their ill-gotten gains of all money wrongfully obtained

8  from Plaintiff and Class members as permitted by Bus. & Prof. Code §17203.

**COUNT II**
**Violation of the Consumer Legal Remedies Act**
**Cal. Civ. Code §1750, *et. seq.***
**(On Behalf of the California Subclass Members)**

12     51.    Plaintiff incorporates paragraphs 1-51 as if fully set forth herein.

13     52.    Plaintiff and each member of the California Subclass is a "Consumer" as that term

14  is defined by Cal. Civ. Code § 1761(d).

15     53.    The Product is a "Good" as that term is defined by Cal. Civ. Code § 1761(a).

16     54.    Defendant is a "Person" as defined by Cal. Civ. Code § 1761(c).

17     55.    The transaction(s) involved here are "Transaction(s)" as defined by Cal. Civ. Code

18  § 1761(e).

19     56.    Plaintiff and the members of the California Subclass are Consumers who

20  purchased the Product for personal use within the applicable statute of limitations period.

21     57.    Plaintiff and the members of the California Subclass have standing to pursue this

22  cause of action because they have suffered injury-in-fact and have lost money or property as a

23  result of Defendant's actions as set forth here.

24     58.    Plaintiff and the members of the California Subclass purchased the Product in

25  reliance on Defendant's labeling and marketing claims.

26     59.    Defendant has used deceptive representations with respect to the Product in

27  violation of Cal. Civ. Code §1770(a)(4).

28

1    60.    Defendant has misrepresented the sponsorship, approval, characteristics, or

2  ingredients of the Product in violation of Cal. Civ. Code §1770(a)(5).

3    61.    Defendant has misrepresented the standard, quality, or grade of the Product in

4  violation of Cal. Civ. Code §1770(a)(7).

5    62.    Defendant knew or should have known that their representations of fact are

6  material and likely to mislead consumers.

7    63.    Defendant's practices, acts, and course of conduct in marketing and selling the

8  Product are likely to mislead a reasonable consumer acting reasonably under the circumstances to

9  his or her detriment. Plaintiff and the members of the California Subclass would not have

10  purchased the Product had they known the true amount of whey protein in the Product.

11    64.    Plaintiff and the members of the California Subclass have been directly and

12  proximately damaged by Defendant's actions.

13    65.    In conjunction with filing this Complaint, on January 13, 2015, Plaintiff's Counsel

14  mailed to Defendants, by certified mail, return receipt requested, the written notice required by

15  Civil Code §1782(a).   This notice informed Defendants of the unfair methods of competition and

16  unfair or fraudulent misrepresentations regarding the nitrogen content of the Product and

17  demanded a refund of the purchase price on behalf of all purchasers of the Product.  Defendant

18  did not appropriately correct, repair, replace, or otherwise remedy or respond to the issues raised

19  in Plaintiff's letter within thirty days after receipt of this notice.  Thus, pursuant to Cal. Civ. Code

20  § 1782, Plaintiff and members of the California Subclass are entitled to damages for Defendant's

21  breach of California's Consumers Legal Remedies Act.

22    66.    Defendant has engaged in, and continue to engage in, business practices in

23  violation of the Consumer Legal Remedies Act, Civ. Code §1750, et seq. by continuing to make

24  false and misleading representations on their labeling of the Product.

25    67.    These business practices are misleading and/or likely to mislead Consumers and

26  should be enjoined.

27

28

**COUNT III**
**Violation of False Advertising Law**
**Cal. Bus. & Prof. Code § 17500, *et seq.***
**(On Behalf of the California Subclass Members)**

68.     Plaintiff incorporates paragraphs 1-68 as if fully set forth herein.

69.     Plaintiff and the members of the California Subclass have standing to pursue a cause of action for false advertising under Bus. & Prof. Code §17500, et seq. because Plaintiff and the members of the California Subclass have suffered an injury-in-fact and lost money as a result of Defendant's actions as set forth herein.

70.     Defendant advertised, marketed, and otherwise disseminated misleading information to the public through advertising mediums including the Internet statements regarding the Product.

71.     Defendant continues to disseminate such statements.

72.     Defendant's statements are misleading.

73.     Defendant knows that these statements are misleading, or could have discovered their misleading nature with the exercise of reasonable care.

74.     Defendant's misleading statements were part of a scheme or plan to sell the Product to the public the true nature of the protein content as calculated and published in their Supplements Facts.

75.     Plaintiff and the members of the California Subclass relied on Defendant's marketing, labeling, and other product literature.

76.     Defendant's actions violate Cal. Bus. & Prof. Code § 17500, et seq.

77.     As a direct and proximate result of Defendant's actions, as set forth herein, Defendant has received ill-gotten gains and/or profits, including but not limited to money from Plaintiff and the members of the California Subclass who paid for the Product. Therefore, Defendant has been unjustly enriched.

78.     Plaintiff and the members of the California Subclass seek injunctive relief, restitution, and disgorgement of Defendant's ill-gotten gains as provided for by Cal. Bus. & Prof. Code §17535.

79.     Plaintiff and the members of the California Subclass seek injunctive relief to compel Defendant from continuing to engage in these wrongful practices in the future. No other adequate remedy at law exists. If an injunction is not ordered, Plaintiff and Class members will suffer irreparable harm and/or injury.

**COUNT IV**
**Breach of Express Warranty**
**(On Behalf of the National Class)**

80.     Plaintiff incorporates paragraphs 1-80 as if fully set forth herein.

81.     Plaintiff and each member of the National Class formed a contract with Defendant at the time they purchased the Product.  The terms of the contract include the promises and affirmations of fact made by Defendant on the Product's packaging and through marketing and advertising, as described above.  This labeling, marketing and advertising constitute express warranties and became part of the basis of bargain, and are part of the standardized contract between Plaintiff and the members of the National Class and Defendant.

82.     Plaintiff and the National Class performed all conditions precedent to Defendant's liability under this contract when they purchased the Product.

83.     Defendant breached express warranties about the Product and its qualities because Defendant's statements about the Product were false and the Product does not conform to Defendant's affirmations and promises described above.

84.     Plaintiff and each of the members of the National Class would not have purchased the Product had they known the true nature of the Product's protein content and what the Product contained.

85.     As a result of Defendant's breach of warranty, Plaintiff and each of the members of the National Class have been damaged in the amount of the purchase price of the Product and any consequential damages resulting from the purchases.

**VII.   DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury of all claims in this complaint so triable.

## VIII.   REQUEST FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the other members of the Classes proposed in this Complaint, respectfully request that the Court enter judgment as follows:

A.     Declaring that this action is a proper class action, certifying the Classes as requested herein, designating Plaintiff as Class Representative and appointing the undersigned counsel as Class Counsel for the Classes;

B.     Ordering Defendant to pay actual damages to Plaintiff and the other members of the Classes;

C.     Ordering Defendant to pay punitive damages, as allowable by law, to Plaintiff and the other members of the Classes;

D.     Ordering Defendant to pay statutory damages, as provided by the applicable state consumer protection statutes invoked above, to Plaintiff and the other members of the Classes;

E.     Ordering Defendant to pay attorneys' fees and litigation costs to Plaintiff and the other members of the Classes;

F.     Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded;

G.     Leave to amend this Complaint to conform to the evidence presented at trial; and

H.     Ordering such other and further relief as may be just and proper.

Respectfully submitted,


By:      _____*/s/ Michael F. Ram*_____
Michael F. Ram (SBN 104805)
Email:  mram@rocklawcal.com
Matt J. Malone (SBN 221545)
Email:  mjm@rocklawcal.com
Susan S. Brown (SBN 287986)
Email:  sbrown@rocklawcal.com
RAM, OLSON, CEREGHINO
 & KOPCZYNSKI LLP
555 Montgomery Street, Suite 820
San Francisco, CA  94111
Telephone:  415-433-4949
Facsimile:  415-433-74311

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Beth E. Terrell, CSB 178181
Email: bterrell@tmdwlaw.com
Mary B. Reiten, CSB 203142
Email:  mreiten@tmdwlaw.com
TERRELL MARSHALL DAUDT
  & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
Telephone:  (206) 816-6603
Facsimile:  (206) 350-3528

*Attorneys for Plaintiff and the Proposed Class*

**ATTESTATION**

I hereby attest that I have on file all holographic signatures corresponding to any signatures indicated by a conformed signature (/s/) within this e-filed document.

DATED this 28th day of July, 2015.

TERRELL MARSHALL DAUDT & WILLIE PLLC

By:   /s/ Mary B. Reiten, CSB #203412
Mary B. Reiten, CSB #203412
Email: mreiten@tmdwlaw.com
936 North 34th Street, Suite 300
Seattle, Washington  98103
Telephone:  (206) 816-6603
Facsimile:  (206) 350-3528

*Attorneys for Plaintiff and the Proposed Class*

<u>CERTIFICATE OF SERVICE</u>

I, Mary B. Reiten, hereby certify that on July 28, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Kathy J. Huang, CBS #240677
Email: khuang@reedsmith.com
REED SMITH LLP
355 South Grand Avenue, Suite 2900
Los Angeles, California 90071-1514
Telephone: (213) 457-8000
Facsimile: (213) 457-8080

Thomas A. Evans, CSB #202841
Email: tevans@reedsmith.com
REED SMITH LLP
101 Second Street, Suite 1800
San Francisco, California  94105
Telephone: (415) 543-8700
Facsimile: (415) 391-8269

Michael J. Suffern, *Admitted Pro Hac Vice*
Email:  msuffern@ulmer.com
ULMER & BERNE LLP
600 Vine Street, Suite 2800
Cincinnati, Ohio 45202-2409
Telephone:  (513) 698-5064

Joshua A. Klarfeld, *Admitted Pro Hac Vice*
Email:  jklarfeld@ulmer.com
ULMER & BERNE LLP
1660 W.2nd Street, Suite 1100
Cleveland, Ohio 44113
Telephone:  (216) 583-7192

*Attorneys for Defendant*

1

2          DATED this 28th day of July, 2015.

3                              TERRELL MARSHALL DAUDT & WILLIE PLLC

4

5                              By:   /s/ Mary B. Reiten, CSB #203412
                                     Mary B. Reiten, CSB #203412
6                                    Email: mreiten@tmdwlaw.com
                                     936 North 34th Street, Suite 300
7                                    Seattle, Washington  98103
                                     Telephone:  (206) 816-6603
8                                    Facsimile:  (206) 350-3528

9                                  *Attorneys for Plaintiff and the Proposed Class*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28