1  KATHY J. HUANG  (SBN 240677)
2  Email:  khuang@reedsmith.com
   REED SMITH LLP
3  355 South Grand Avenue, Suite 2900
4  Los Angeles, CA  90071-1514
   Telephone:  (213) 457-8000
5  Facsimile:  (213) 457-8080

6
   THOMAS A. EVANS (SBN 202841)
7  Email:  tevans@reedsmith.com
8  REED SMITH LLP
   101 Second Street, Suite 1800
9  San Francisco, CA  94105
10 Telephone:  (415) 543-8700
   Facsimile:  (415) 391-8269
11
12 MICHAEL J. SUFFERN (admitted *pro hac vice*)
   Email:  msuffern@ulmer.com
13 ULMER & BERNE LLP
14 600 Vine Street, Suite 2800
   Cincinnati, OH 45202
15 Telephone:  (513) 698-5064
16 Facsimile:  (513) 698-5065

17 Attorneys for Defendant
   MusclePharm Corporation
18
19 UNITED STATES DISTRICT COURT

20
21 NORTHERN DISTRICT OF CALIFORNIA

22 | | |
23 TUCKER DURNFORD, individually and on behalf of all others similarly situated, | | Case No. 3:15-cv-00413-HSG
   | | Honorable Haywood S. Gilliam Jr.
24 | | |
25 Plaintiff, | | NOTICE OF MOTION AND
26 v. | | DEFENDANT MUSCLEPHARM
   | | CORPORATION'S MOTION TO
27 MUSCLEPHARM CORP., | | DISMISS PLAINTIFF'S FIRST
28

| | |
|---|---|
| Defendant. | AMENDED CLASS ACTION COMPLAINT |
| | |
| | Filed Concurrently with (1) Memorandum of Points & Authorities; (2) Proposed Order. |
| | |
| | Date:  October 15, 2015 |
| | Time: 2:00 P.M. |
| | Courtroom:  15 |
| | |
| | Date filed:  January 28, 2015 |
| | FAC filed:  July 28, 2015 |
| | Class Discovery cut-off: Jan. 8, 2016 |
| | Trial Date: None set |

TO PLAINTIFF AND HIS COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on October 15, 2015 at 2:00 p.m., in Courtroom 15, before the Honorable Haywood S. Gilliam Jr. of the above-captioned court, located at 450 Golden Gate Avenue, San Francisco, California 94102, or as soon thereafter as the matter may be heard, defendant MusclePharm Corporation will and hereby does move to dismiss plaintiff's First Amended Class Action Complaint ("Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6), on grounds of failure to state a claim upon which relief can be granted and based on preemption by federal law, as set forth in the concurrently filed Memorandum of Points and Authorities, which is incorporated by reference.

The Court should dismiss the entire Complaint and each count of the Complaint including Count I for alleged Violation of the Unfair Competition Act; Count II for alleged Violation of the Consumer Legal Remedies Act; Count III for alleged Violation of False Advertising Law; Count IV for alleged Breach

of Express Warranty for failure to state a claim upon which relief can be granted as preempted by federal law that regulates the content of food and dietary supplement labels.

The motion is based on this notice of motion and motion to dismiss, and the concurrently filed memorandum of points and authorities, the pleadings and papers filed in this case, and such other matters as the Court may consider before ruling on this motion.

Dated: August 27, 2015        Respectfully submitted,

/s/ *Michael J. Suffern* (pro hac vice)
MICHAEL J. SUFFERN
Email:  msuffern@ulmer.com
ULMER & BERNE LLP
600 Vine Street, Suite 2800
Cincinnati, OH 45202
Telephone:  (513) 698-5064
Facsimile:  (513) 698-5065

KATHY J. HUANG  (SBN: 240677)
Email:  khuang@reedsmith.com
REED SMITH LLP
355 South Grand Avenue, Suite 2900
Los Angeles, CA  90071-1514
Telephone:  (213) 457-8000
Facsimile:  (213) 457-8080

THOMAS A. EVANS (SBN 202841)
Email:  tevans@reedsmith.com
REED SMITH LLP
101 Second Street, Suite 1800
San Francisco, CA  94105
Telephone:  (415) 543-8700
Facsimile:  (415) 391-8269

Attorneys for Defendant MusclePharm Corporation

3

1  KATHY J. HUANG  (SBN 240677)
   Email:  khuang@reedsmith.com
2  REED SMITH LLP
3  355 South Grand Avenue, Suite 2900
   Los Angeles, CA  90071-1514
4  Telephone:  (213) 457-8000
5  Facsimile:  (213) 457-8080

6  THOMAS A. EVANS (SBN 202841)
7  Email:  tevans@reedsmith.com
   REED SMITH LLP
8  101 Second Street, Suite 1800
9  San Francisco, CA  94105
   Telephone:  (415) 543-8700
10 Facsimile:  (415) 391-8269

11 MICHAEL J. SUFFERN (admitted *pro hac vice*)
12 Email:  msuffern@ulmer.com
13 ULMER & BERNE LLP
   600 Vine Street, Suite 2800
14 Cincinnati, OH 45202
15 Telephone:  (513) 698-5064
   Facsimile:  (513) 698-5065
16
17 Attorneys for Defendant
   MusclePharm Corporation
18
19              UNITED STATES DISTRICT COURT
20            NORTHERN DISTRICT OF CALIFORNIA
21

| | |
|---|---|
| 22  TUCKER DURNFORD, individually and on behalf of all others similarly situated, | Case No. 3:15-cv-00413-HSG |
| 23 | Honorable Haywood S. Gilliam Jr. |
| 24                          Plaintiff, | |
| 25       v. | MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT MUSCLEPHARM |
| 26  MUSCLEPHARM CORP., | |
| 27                          Defendant. | CORPORATION'S MOTION TO DISMISS PLAINTIFF'S FIRST |
| 28 | |

| | |
|---|---|
| | AMENDED CLASS ACTION COMPLAINT |
| | |
| | Filed Concurrently with |
| | (1) Notice of Motion and Motion to Dismiss; |
| | (2) Proposed Order. |
| | |
| | Date:  October 15, 2015 |
| | Time: 2:00 P.M. |
| | Courtroom:  15 |
| | |
| | Date filed:  January 28, 2015 |
| | FAC filed:  July 28, 2015 |
| | Discovery cut-off: January 8, 2016 |
| | Trial Date: None set |

TABLE OF CONTENTS

I.      INTRODUCTION AND SUMMARY OF THE ARGUMENT ..........................1

II.     FACTUAL BACKGROUND....................................................................2

        A.      PLAINTIFF'S ALLEGATIONS..................................................2

        B.      THE REGULATION OF DIETARY SUPPLEMENTS ...................3

III.    ARGUMENT ........................................................................5

        A.      STANDARD OF REVIEW .......................................................5

        B.      PLAINTIFF'S CLAIMS ARE PREEMPTED BY THE FDCA AND
                FDA'S REGULATIONS.........................................................6

                1.      Plaintiff's Claims Seek to Impose Protein Content
                        Labeling Requirements that Differ From FDA's ..........................6

                2.      Plaintiff Does Not Allege or Demonstrate that the
                        "Scientific" Testing Complies with Standards Set by
                        FDA ........................................................................8

        C.      PLAINTIFF LACKS STANDING ................................................9

        D.      PLAINTIFF'S ALLEGATIONS DO NOT SATISFY THE
                REQUIREMENTS OF CIVIL RULE 9 ....................................10

IV.     CONCLUSION......................................................................11

1
2

# TABLE OF AUTHORITIES

3

**Cases**

4
5

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...........................................................................................5

6

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ...........................................................................................5

7
8

*Bruton v. Gerber Prods. Co.*,
  No. 12–cv–02412–LHK, 2013 WL 4833413 (N.D. Cal. Sept. 6, 2013) ...........9

9
10

*Carrea v. Dreyer's Grand Ice Cream, Inc.*,
  No. 10-cv-1044-JSW, 2011 WL 159380 (N.D. Cal. Jan 10, 2011),
  *aff'd* 475 Fed. Appx. 113 (9th Cir. 2012).........................................................9

11
12

*Dumas v. Kipp*,
  930 F.3d 386 (9th Cir. 1996) .............................................................................5

13
14

*Durell v. Sharp Healthcare*,
  183 Cal. App. 4th 1350 (Ct. App. 2010) .........................................................10

15

*Gubala v. CVS Pharmacy, Inc.*,
  No., 14-cv-9039, 2015 WL 3777627 (N.D. Ill. June 16, 2015)....................6, 7

16
17

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) .........................................................................10

18

*Kwikset Corp. v.Super. Ct.*,
  51 Cal. 4th 310 (2011).......................................................................................9

19
20

*Mee v. I A Nutrition, Inc.*,
  No. C-14-5006, 2015 WL 2251303 (N.D. Ca. May 13, 2015) .................6, 7, 8

21

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
  521 F.3d 1097 (9th Cir. 2008) ...........................................................................5

22
23

*Moss v. U.S. Secret Serv.*,
  572 F.3d 962 (9th Cir. 2009) .............................................................................5

24
25

*Reddy v. Litton Indus., Inc.*,
  912 F.2d 291 (9th Cir. 1990) .............................................................................5

26

*Samet v. Procter & Gamble Co.*,
  No. 12–cv–1891–PSG, 2013 WL 3124647 (N.D. Cal. June 18, 2013) ............9

27
28

*Sprewell v. Golden State Warriors*,
  266 F.3d 979 (9th Cir. 2001) .............................................................................5

*Stewart v. U.S. Bancorp,*
    297 F.3d 953 (9th Cir. 2002) ........................................................................5

*Swartz v. KPMG LLP,*
    476 F.3d 756 (9th Cir. 2007) ........................................................................6

*Tobacco II Cases,*
    46 Cal. 4th 298 (2009) ..................................................................................9

*Vess v. Ciba-Geigy Corp. USA,*
    317 F.3d 1097 (9th Cir. 2003) ................................................................6, 10

*Wilson v. Frito–Lay North America, Inc.,*
    No. 12–cv–1586–SC, 2013 WL 5777920 (N.D. Cal. Oct. 24, 2013) ...............9

**Statutes**

21 U.S.C. § 343(q)(1) ...........................................................................................4

21 U.S.C. § 343-1(a)(4) .....................................................................................2, 4

21 U.S.C. § 343-1(a)(5) .....................................................................................2, 4

21 U.S.C. §343(r)(1)(A) .......................................................................................4

21 U.S.C. §343-1 ...................................................................................................3

**Rules**

Fed. R. Civ. P. 12(b)(6) ........................................................................................5

Fed. R. Civ. P. 9(b) ..............................................................................................5

**Regulations**

21 C.F.R. §101.36(f) .............................................................................................4

21 C.F.R. §101.9(c)(7) ..........................................................................................4

3:15-cv-00413-HSG
Memorandum of Points and Authorities in Support of Defendant MusclePharm Corporation's Motion to Dismiss
Plaintiff's First Amended Class Action Complaint

## I.    INTRODUCTION AND SUMMARY OF THE ARGUMENT

Plaintiff filed his original Class Action Complaint on January 28, 2015. (Doc. 1.)  On July 28, 2015, plaintiff filed his First Amended Class Action Complaint ("Complaint").  (Doc. 38.)  Plaintiff's claims relate to the declaration of protein content shown in accord with federal law on MusclePharm Corporation's dietary supplement Arnold Iron Mass.

According to plaintiff, the protein content on the Iron Mass label is overstated because, so plaintiff claims, the amount of stated protein is "spiked" with non-protein sources of nitrogen.[1]  Plaintiff contends that, as a result, the protein declaration on the product's label is misleading in violation of California state law.  Plaintiff's allegations are premised on some unidentified "scientific testing," which he claims shows "the actual total content per serving of protein is actually around 19.4 grams (as calculated from the total bonded amino acids) as opposed to 40 grams of protein claims by Defendant for the Product." (Complaint, ¶23.[2])  Plaintiff's lawsuit, however, must be dismissed for several reasons.

First, plaintiff's claims are preempted by federal law.  Dietary supplements, like Iron Mass, are regulated under the Federal Food, Drug, and Cosmetic Act ("FDCA"), as amended by the Dietary Supplement Health and Education Act of 1994 ("DSHEA") and the Nutritional Labeling and Education Act ("NLEA").  In NLEA, Congress included an express preemption provision that prohibits states from enacting any requirement for nutrition labeling of food

---

[1] As discussed below, FDA regulations state that protein content is calculated by multiplying the amount of nitrogen in a product by 6.25.

[2] Plaintiff cites to "Exhibit A" in support of his allegation.  There was no "Exhibit A" attached to the first amended complaint.  In a separate filing on February 4, 2015, plaintiff filed Exhibit A to his original complaint.  Presumably that is the same "Exhibit A" referred to in the amended complaint.  That document appears to be the third page of a three-page document and does not include identifying information.

(which includes dietary supplements) that is not identical to the federal requirements. The declaration of nutrition information on product labeling is governed by the federal Food and Drug Administration's ("FDA") regulations, which include the method to be used for calculating protein content in foods and dietary supplements. Plaintiff's claims attempt to impose a requirement that is not imposed by or contained in the federal law and, therefore, is preempted.

Second, plaintiff lacks standing to pursue claims based on the allegations in his Complaint. Not once in his Complaint does plaintiff allege that he ever read the Iron Mass label and not once does he allege he saw or read any of MusclePharm's marketing materials or product literature regarding Iron Mass. Further, the word "relied" is used but once in his Complaint, and then in only a cursory, conclusory fashion. It is well-established that a plaintiff must have statutory standing to pursue claims under California's Unfair Competition Law ("UCL"); California's False Advertising Law ("FAL"); and California's Consumer Legal Remedies Act ("CLRA").

Finally, plaintiff's lawsuit should be dismissed because he does not plead fraud with the particularity required under Federal Rule of Civil Procedure 9(b).

## II.    FACTUAL BACKGROUND

### A.    PLAINTIFF'S ALLEGATIONS

Plaintiff's Complaint is filed on behalf of plaintiff, Tucker Durnford, and consumers nationwide of MusclePharm's Iron Mass product. (Complaint, ¶¶1, 34.) Plaintiff alleges he purchased Iron Mass on July 13, 2014, from a GNC store in San Jose, California. (*Id.*, ¶15.) The Complaint includes causes of action for unfair competition under California's Business and Professions Code §17200; violations of California Consumers Legal Remedies Act, California Civil Code §1750, *et seq.*; false advertising under California's Business and

Memorandum of Points and Authorities in Support of Defendant MusclePharm Corporation's Motion to Dismiss
Plaintiff's First Amended Class Action Complaint

Professions Code §17500; and breach of express warranty.  (*See generally* Complaint.)

The crux of each cause of action is that the labeled amount of protein and the source of the protein in MusclePharm's Iron Mass are inaccurate and misleading.  (*Id.*)  More specifically, plaintiff alleges Iron Mass includes "protein-spiking agents" (i.e., free form amino acids and non-protein ingredients) to increase the nitrogen content of the product and thereby inflate the declared protein content.  (*See, e.g., id.*, ¶¶ 6, 20.)  Plaintiff also alleges that by identifying ingredients in the product by categories (i.e., "Elite Complex Carbohydrate Matrix," "Muscle Plasma Protein Matrix," "High Performance Healthy Fats Matrix," "Performance Growth & Muscle Volumizer," and "Pro-Digest Blend,") the product label misleadingly implies that the declared protein content is derived from only two sources:  hydrolyzed beef protein and lactoferrin protein.

According to plaintiff, "[a]fter scientific testing," the "actual total content per serving of protein is actually 19.4 grams (as calculated from the total bonded amino acids) as opposed to 40 grams of protein" as stated on the label.  (*Id.*, ¶23.)  Exhibit A to plaintiff's complaint is the purported results of the testing. The results do not identify what testing methods were used or what samples were tested.   Plaintiff alleges that, as a result, Iron Mass is misbranded and violates both 21 U.S.C. §343(a)(1) and California's Sherman Act, California Health & Safety Code §109875, *et seq*.  (*Id.*, ¶¶29, 30.)

## B.    THE REGULATION OF DIETARY SUPPLEMENTS

Dietary supplements, like Iron Mass, are regulated by the FDA under the FDCA as amended by DSHEA and NLEA.   NLEA includes an express preemption provision, 21 U.S.C. §343-1, that prohibits states from enacting "any requirement for nutrition labeling of food that is not identical to the requirement of section 343(q) of this title … [or] any requirement respecting any claim of the

type described in section 343(r)(1) of this title, made in the label or labeling of food that is not identical to the requirement of section 343(r) of this title." 21 U.S.C. §§ 343-1(a)(4)-(5).  In short, through the NLEA amendments, the FDCA expressly preempts any food labeling "requirements" that are not identical to sections 343(q) or 343(r).

Section 343(r)(1)(A) governs claims "made in the label or labeling of the food which expressly or by implication characterizes the level of any nutrient which is of the type required by paragraph (q)(1) or (q)(2)." 21 U.S.C. §343(r)(1)(A).   Section (q)(1)(D) includes a requirement that the "label or labeling" of food products intended for human consumption state "the amount of … total protein contained in each serving size or other unit of measure." 21 U.S.C. § 343(q)(1).  FDA's regulations set the method for calculating the amount of protein based on the total nitrogen content of the food.  *See* 21 C.F.R. §101.9(c)(7).  That regulation provides that "[p]rotein content may be calculated on the basis of the factor of 6.25 times the nitrogen content of the food as determined by the appropriate method of analysis as given in the 'Official Methods of Analysis of the AOAC International, … 15th Ed. (1990) …." 21 C.F.R. §101.9(c)(7).[3]  FDA regulations subject dietary supplements to the same nutrient content standards as food.  21 C.F.R. §101.36(f),    The FDA also dictates the method for selecting samples for testing to confirm a supplement's nutrient content: "[t]he sample for analysis [must] consist of a composite of 12 subsamples (consumer units) or 10 percent of the number of packages in the same inspection lot, whichever is smaller, randomly selected to be representative of a lot." 21 C.F.R § 101.36(f).

---

[3] AOAC International (formerly the Association of Official Agricultural Chemists) is an organization that develops and adopts standards for analytical testing of food, supplements, pharmaceuticals and agricultural products.

## III.   ARGUMENT

### A.   STANDARD OF REVIEW

Dismissal under Federal Rule of Civil Procedure 12(b)(6) is appropriate "where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).   Further, when a complaint does not contain sufficient factual matter, even when accepted as true, to state a claim to relief plausible on its face, it cannot survive a motion to dismiss.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   A claim is facially plausible only when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Where a claim is preempted by federal law, it fails to state a claim upon which relief can be granted.  *See Stewart v. U.S. Bancorp,* 297 F.3d 953, 959 (9th Cir. 2002).

In ruling on a motion to dismiss, a court is not required to accept as true unreasonable inferences, unwarranted deductions of fact, or legal conclusions merely because they are labeled as factual allegations.  *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (applying *Iqbal*, 556 U.S. at 681). Finally, the court may dismiss the action with prejudice if amendment would be futile; i.e., the complaint's deficiencies cannot be cured via amendment.  *See Dumas v. Kipp*, 930 F.3d 386, 393 (9th Cir. 1996); *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990).

Claims sounding in fraud or mistake also must comply with the heightened pleadings requirements of Rule 9(b).  Under that rule, the complaint "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  Specifically, Rule 9(b) "requires … an account of the time, place, and specific content of the false representations as well as the identities of

5

1   the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764

2   (9th Cir. 2007) (quotation omitted); *see also Vess v. Ciba-Geigy Corp. USA*, 317

3   F.3d 1097, 1106 (9th Cir. 2003) (holding averments of fraud must be

4   accompanied by "the who, what, when, where, and how of the misconduct

5   charged" (quotation omitted)).

6   **B.    PLAINTIFF'S CLAIMS ARE PREEMPTED BY THE FDCA AND FDA'S**

7   **REGULATIONS**

8          The labeling of protein content is specifically addressed in FDA's

9   regulations and falls squarely within the statutes and regulations covered by the

10  NLEA express preemption provision.  As such, plaintiff's claims are preempted.

11  **1.    Plaintiff's Claims Seek to Impose Protein Content Labeling**

12  **Requirements that Differ From FDA's**

13         In the past few months, two separate courts have dismissed lawsuits with

14  allegations virtually identical to those plaintiff makes here as preempted under

15  the FDCA and FDA's regulations.  *See Gubala v. CVS Pharmacy, Inc.*, No., 14-

16  cv-9039, 2015 WL 3777627 (N.D. Ill. June 16, 2015); *Mee v. I A Nutrition, Inc.*,

17  No. C-14-5006, 2015 WL 2251303 (N.D. Ca. May 13, 2015).  In both cases, the

18  plaintiffs, like Mr. Durnford, alleged that the amount of protein in the

19  defendant's protein powder products was overstated because the defendants

20  included non-protein, nitrogen-containing ingredients in the products (or as

21  plaintiff would term it "spiked" their products) to elevate the protein content.  In

22  both cases, the courts held the claims were preempted.

23         In *Gubala*, the plaintiff alleged the protein powder he purchased did not

24  actually include "26 grams of protein" as stated on the product's label.  *Gubala*,

25  2015 WL 3777627 at *2.  The plaintiff alleged that his analysis showed the

26  product contained only 21.8 grams of protein after the additional non-protein

27  nitrogen-containing ingredients were removed.  *Id.*  The plaintiff in *Gubala*

28

1    argued that he was not asserting that the amount of protein appearing on the

2    defendant's label was misleading or that defendant should use a different method

3    to calculate protein content, but that he was misled as to the source of the protein

4    included in the product.  *Id.* at *4.  The court found that the plaintiff's claims

5    would require the defendant to label its product in a manner not required by the

6    FDCA and FDA's regulations.  *Id.*  As a result, the court held the plaintiff's

7    claims were preempted because the requirement the plaintiff's claim would

8    impose "would not be identical to the labeling requirements imposed by federal

9    law." *Id.*

10       Similarly, in *Mee*, the plaintiff alleged that the amount of protein reported

11   on product labels was false or misleading because "according to 'scientific tests'

12   performed for plaintiff, the actual amount of protein contained in the product is

13   lower than the amount stated." *Mee*, 2015 WL 2251303 at *1.  The court ruled

14   that the "[p]laintiffs' claim, specifically, that the protein content stated in the

15   Supplement Facts is false for the reason that the calculation was made without

16   excluding such non-protein nitrogen-containing substances is preempted, as it

17   seeks to base liability on defendant's failure to employ a testing procedure not

18   imposed by or contained in any federal regulation, and indeed, is a challenge to

19   the very method allowed by the FDA." *Id.* at * 3.

20       Plaintiff's allegations here are no different than those in *Gubala* and *Mee*.

21   He alleges the amount of protein listed on the Iron Mass label is inaccurate.  He

22   alleges it is inaccurate because the product includes non-protein, nitrogen-

23   containing ingredients that boost the protein calculation.  And, he alleges that

24   scientific testing shows the protein content of the product is less than stated on

25   the product label.  This Court should find, just as the courts in *Gubala* and *Mee*

26   did, that those allegations fall squarely within the FDCA's provisions and FDA's

27

28

1   regulations and thus due to NLEA's prohibition of state-imposed requirements

2   that are not identical to the federal requirements are preempted.

3          **2.      Plaintiff Does Not Allege or Demonstrate that the "Scientific"**
                   **Testing Complies with Standards Set by FDA**
4

5          Courts have also dismissed complaints that contend that the nutrition

6   content is misstated based on "scientific tests" that do not comply with the

7   FDA's testing standards.  In *Mee*, the court also ruled that plaintiff's allegations

8   regarding protein content and the presence or absence of various ingredients

9   based on the "scientific testing" that was performed for them were preempted

10  because those tests did not comply with FDA's testing requirements in 21 C.F.R.

11  §101.9(g)(2).  *Id.* at *4.  Aside from noting that the plaintiffs did not allege that

12  the testing on which they relied was performed in accordance with FDA's 12-

13  sample method set forth in §101.9(g)(2), the court noted that the copies of the

14  laboratory tests the plaintiffs submitted as exhibits to their complaint revealed

15  the tests, in fact, did not comply with FDA's method and consequently held the

16  plaintiffs "pleaded facts demonstrating preemption." *Id.*  The *Mee* Court joined

17  other courts that refuse to permit claims based on unspecified "scientific testing"

18  that are not alleged to comply with FDA's required testing methods.  *See Salazar*

19  *v. Honest Tea*, 2014 WL 2593601 at *1, 6 (E.D. Cal. June 10, 2014)(plaintiffs

20  did not allege that "independent testing" followed FDA's 12-sample protocol);

21  *See also Vital v. One World Co.*, 2012 U.S. Dist. LEXIS 186203, at *2, 13-18

22  (C.D. Cal. Nov. 30, 2012)(granting summary judgment where plaintiffs failed to

23  demonstrate testing report was prepared based on AOAC accepted method or

24  using 12-sample protocol).

25          As was true in *Mee*, there is no indication that the "scientific tests" on

26  which plaintiff relies complies with FDA's method of analysis.  The copy of

27  Exhibit A to plaintiff's Complaint is one page of a three-page result of some test,

28

3:15-cv-00413-HSG
Memorandum of Points and Authorities in Support of Defendant MusclePharm Corporation's Motion to Dismiss
Plaintiff's First Amended Class Action Complaint

performed on some unidentified product, at some unknown point in time.  On that basis too, plaintiff's claims should be found preempted.

Plaintiff's claims are preempted and his lawsuit should be dismissed with prejudice.

## C.   PLAINTIFF LACKS STANDING

Plaintiff's lawsuit also must be dismissed because plaintiff lacks standing to pursue the claims based in his Complaint.  In order to assert a claim under the UCL, FAL, or CLRA, a person must have "suffered injury in fact and ha[ve] lost money or property as a result."  Cal. Bus. & Prof. Code §§17204, 17535.  *See also Carrea v. Dreyer's Grand Ice Cream, Inc.*, No. 10-cv-1044-JSW, 2011 WL 159380, at *2 (N.D. Cal. Jan 10, 2011) (analyzing standing under CLRA, UCL, and FAL), *aff'd* 475 Fed. Appx. 113 (9th Cir. 2012).   "A plaintiff has suffered economic injury when she has either: (1) expended money due to the defendants' acts of unfair competition; (2) lost money or property; or (3) been denied money to which he or she has a cognizable claim."  *Samet v. Procter & Gamble Co.*, No. 12–cv–1891–PSG, 2013 WL 3124647, at *3 (N.D. Cal. June 18, 2013) (citation and quotation marks omitted). The "as a result" language means that actual reliance is necessary for standing.  *See Kwikset Corp. v.Super. Ct.*, 51 Cal. 4th 310, 326–27 (2011); *In re Tobacco II Cases*, 46 Cal. 4th 298, 306 (2009) (stating plaintiff "proceeding on a claim of misrepresentation as the basis of his or her UCL action must demonstrate actual reliance on the allegedly deceptive or misleading statements"). Actual reliance and economic injury also are required to have standing to sue under the CLRA and the "unlawful" prong of the UCL. *See Bruton v. Gerber Prods. Co.*, No. 12–cv–02412–LHK, 2013 WL 4833413, at *13 (N.D. Cal. Sept. 6, 2013); *Wilson v. Frito–Lay North America, Inc.*, No. 12–cv–1586–SC, 2013 WL 5777920, at *7–8 (N.D. Cal. Oct. 24, 2013) (applying the actual reliance requirement to the plaintiff's UCL claim alleging

9

1  unlawfulness based on misbranding in violation of FDA regulations and the

2  Sherman Law "because Plaintiffs are asserting that Defendant used deceptive

3  labeling practices to hide the truth of the Products' ingredients"); *Durell v. Sharp*

4  *Healthcare*, 183 Cal. App. 4th 1350, 1363 (Ct. App. 2010).

5      It is axiomatic that in order to rely on allegedly deceptive or misleading

6  statements, the plaintiff first must have read them.  Yet, there is not a single

7  allegation in plaintiff's Complaint that he read the Iron Mass label or any of the

8  marketing or product literature related to the product.  And, there is but one

9  allegation of reliance, which is cursory and conclusory:   "Plaintiff and the

10  members of the California Subclass relied on Defendant's marketing, labeling,

11  and other product literature."  (Complaint, ¶75.)  That allegation is insufficient to

12  establish the necessary standing to pursue the claims asserted in plaintiff's

13  Complaint.

14      **D.   PLAINTIFF'S ALLEGATIONS DO NOT SATISFY THE REQUIREMENTS**

15          **OF CIVIL RULE 9**

16      In addition to its other shortcomings, plaintiff's Complaint is deficient in

17  its failure to plead with the particularity required by Rule 9 of the Federal Rules

18  of Civil Procedure.  Rule 9(b) applies to allegations of fraud and not merely

19  claims of fraud.  *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir.

20  2009)(noting claims under UCL subject to requirements of Rule 9(b)).  Further,

21  when a plaintiff's complaint relies entirely on a fraudulent course of conduct as

22  the basis of a claim, "the claim is said to be 'grounded in fraud.'"  *Vess v. Ciba-*

23  *Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003).  In those cases, the

24  complaint as a whole must satisfy the heightened pleading requirements of Rule

25  9(b).  *Id.* at 1108.  It is only where a plaintiff alleges "some fraudulent and some

26  non-fraudulent conduct," that the allegations supporting a claim based on the

27  non-fraudulent conduct need not satisfy Rule 9(b)'s requirements.  *Id.* at 1104

28

Here, plaintiff's entire Complaint centers around the allegedly fraudulent nature of MusclePharm's conduct regarding the disclosure of the protein content in its product label.   As such, it must satisfy Rule 9(b)'s particularity requirement.   However, it does not.   Plaintiff has not satisfied the "who, what, when, where, and how" requirement of Rule 9(b).   Instead, plaintiff alleges that he and other consumers were misled by product information.   He relies on "scientific testing" that is neither identified nor identifiable.   The one page summary results do not include any information to establish what product was tested, when it was tested, who tested it, how it was tested, or whether it complied with FDA's procedure for testing.   That "scientific testing" cannot substantiate the misleading and fraudulent nature of MusclePharm's conduct. Furthermore, plaintiff does not allege that he read or relied on the Iron Mass label or any marketing materials or product literature related to Iron Mass in making his decision to purchase Iron Mass.   Plaintiff's allegations simply do not satisfy Rule 9(b)'s pleading requirements.   His Complaint should be dismissed for that reason also.

## IV.   CONCLUSION

For the foregoing reasons, defendant respectfully requests that the Court dismiss plaintiff's First Amended Class Action Complaint with prejudice.


Dated:  August 27, 2015                    Respectfully submitted,

                                           /s/ *Michael J. Suffern* (pro hac vice)
                                           MICHAEL J. SUFFERN
                                           Email:  msuffern@ulmer.com
                                           ULMER & BERNE LLP
                                           600 Vine Street, Suite 2800
                                           Cincinnati, OH 45202
                                           Telephone:  (513) 698-5064
                                           Facsimile:  (513) 698-5065

11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

KATHY J. HUANG  (SBN: 240677)
Email:  khuang@reedsmith.com
REED SMITH LLP
355 South Grand Avenue, Suite 2900
Los Angeles, CA  90071-1514
Telephone:  (213) 457-8000
Facsimile:  (213) 457-8080

THOMAS A. EVANS (SBN 202841)
Email:  tevans@reedsmith.com
REED SMITH LLP
101 Second Street, Suite 1800
San Francisco, CA  94105
Telephone:  (415) 543-8700
FACSIMILE:  (415) 391-8269

Attorneys for Defendant
MusclePharm Corporation

3:15-cv-00413-HSG
Memorandum of Points and Authorities in Support of Defendant MusclePharm Corporation's Motion to Dismiss
Plaintiff's First Amended Class Action Complaint

CERTIFICATE OF SERVICE – CM/ECF

I, Michael J. Suffern, hereby certify and declare as follows:

      1.     I am over the age of 18 years and am not a party to the within cause, I am employed in the County of Hamilton, State of Ohio.

      2.     My business address is 600 Vine Street, Suite 2800, Cincinnati, OH 45202.

      3.     On August 27, 2015, I served a true copy of the attached document titled:

NOTICE OF MOTION AND MOTION TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT MUSCLEPHARM CORPORATION'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT

by filing through the CM/ECF system and thereby causing it to be served via electronic mail to all persons appearing on the docket sheet to receive service in this case, as listed below

Michael F. Ram, Esq.
Matt J. Malone, Esq.
Susan S. Brown, Esq.
RAM, OLSON, CEREGHINO & KOPCZYNSKI LLP

And

Beth E. Terrell, Esq.
Mary B. Reitan, Esq.
TERRELL MARSHALL DAVDT & WILLIE PLLC
Counsel for Plaintiff

      I certify and declare under penalty of perjury that the foregoing is true and correct.  Executed this 27th day of August 2015, in Cincinnati, Ohio.

/s/ *Michael J. Suffern*
MICHAEL J. SUFFERN

Email:  msuffern@ulmer.com
Telephone:  (513) 698-5064